UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE PEREZ, | ) 1:05-CV-00716-SMS |
| | ) |
| Plaintiff, | ) DECISION AND ORDER DENYING |
| v. | ) PLAINTIFF'S SOCIAL SECURITY |
| | ) COMPLAINT (DOC. 1) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) ORDER DIRECTING THE ENTRY OF |
| Security, | ) JUDGMENT FOR DEFENDANT JO ANNE B. |
| | ) BARNHART, COMMISSIONER OF SOCIAL |
| Defendant. | ) SECURITY, AND AGAINST PLAINTIFF |
| | ) IRENE PEREZ |
| | ) |

Plaintiff is proceeding with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for benefits. By order dated October 18, 2005, Judge Oliver W. Wanger reassigned this case to the undersigned Magistrate Judge because both parties had consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment, pursuant to 28 U.S.C. § 636(c). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the undersigned Magistrate Judge.

## HISTORY

On February 4, 2003, Plaintiff filed an application for

1

supplemental security income (SSI) pursuant to Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1382c, alleging disability since March 3, 2002, due to diabetes, depression, and arthritis (Tr. 48-51, 65). The Commissioner denied her application initially and on reconsideration (Tr. 26-30). On December 9, 2004, Plaintiff appeared with counsel and testified, via an interpreter, before the Honorable Patricia Leary Flierl, an administrative law judge (ALJ). (Tr. 327-52). In a decision dated January 3, 2005, the ALJ found that Plaintiff was not disabled because she could perform a significant number of jobs. (Tr. 14-18). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on April 9, 2005. (Tr. 4-8).

Plaintiff commenced this action by filing the complaint on May 27, 2005. Plaintiff's opening brief was filed on December 14, 2005; Defendant filed an opposing brief, and Plaintiff filed a reply on January 6, 2006.

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work involving simple repetitive tasks; she was unable to perform her past relevant work (PRW) as a home attendant but was able to perform a broad range of light work that was not significantly reduced by her nonexertional limitations. Using 20 C.F.R. § 416.969 and Rule 202.16, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 as a framework for decisionmaking, the ALJ concluded that Plaintiff was not disabled. (Tr. 17.)

## STANDARD AND SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of

2

the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

## ANALYSIS

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a

disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[1]

I. Use of the Grids with a Nonexertional Impairment

Plaintiff argues that the ALJ's use of the grids was inappropriate because Plaintiff had a significant nonexertional impairment, namely, a moderate restriction in activities of daily living.

At step five, it is the Defendant's burden to show that Plaintiff could perform other work existing in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Defendant may meet this burden either by obtaining the opinion of a vocational expert (VE) or by relying on the medical-vocational guidelines (the Medical-Vocational

---

[1] All references to the Code of Federal Regulations is to the 2005 version unless otherwise stated.

1  Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2), which
2  constitute administrative notice of the existence of jobs for
3  persons with specified limitations. Id. at 1099. When the grids
4  are applicable, the Secretary may obtain a directed conclusion of
5  nondisability and may take administrative notice that jobs exist
6  in the national economy that a claimant can perform. Heckler v.
7  Campbell, 461 U.S. 458, 461-462. The guidelines may only be
8  applied when they accurately reflect a claimant's limitations.
9  Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573,
10 576-77 (9th Cir. 1988). If a nonexertional limitation
11 significantly limits the range of work one can perform,
12 mechanical application of the grids is inappropriate, and a VE is
13 required. Tackett v. Apfel, 180 F.3d 1194, 1102 (9th Cir. 1999).
14      Where nonexertional limitations are found not to
15 significantly limit a claimant's exertional capacity, then use of
16 the grids is appropriate. Razey v. Heckler, 785 F.2d 1426, 1430
17 (9th Cir. 1986), as amended, 794 F.2d 1348 (where substantial
18 evidence supported the agency's conclusion that the claimant's
19 generalized anxiety disorder did not prevent him from engaging in
20 the work that he was physically able to do, use of the grids was
21 appropriate); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983)
22 (where substantial evidence supported the finding that the
23 claimant's non-exertional impairments of deafness, dizziness, and
24 drug dependence did not significantly limit his exertional
25 capacities, use of the grids was appropriate, and no finding as
26 to specific jobs was required).
27      Here, the ALJ found that Plaintiff had a moderate
28 restriction of activities of daily living; mild difficulties in

6

maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 16.) He did so after reviewing the medical evidence regarding Plaintiff's mental impairment. (Tr. 15-16.)

The history included a treatment note from her treating physician in June 2003 reflecting that Plaintiff reported that she had been diagnosed with anxiety and referring her to community mental health for counseling. (Tr. 185.)

On August 7, 2003, Sonia Kelly, Ph.D., performed a consultative examination of Plaintiff and prepared a report reflecting a diagnosis of bipolar I disorder, most recent episode depressed, severe with psychotic features (mild psychotic symptoms), panic disorder without history of/rule out agoraphobia, and a GAF of 39. (Tr. 225-29.)

Plaintiff reported to Dr. Kelly depression as well as nervousness, tearfulness, and isolation. She alleged panic attacks in which she experienced heart palpitations, sweating, numbness, tingling, trembling, shaking, hot flashes, chills, shortness of breath, a sense of choking, chest pain and discomfort that radiated down one arm, nausea, abdominal distress, dizziness, derealization, fear of losing control, and fear of dying. She reported loss of twenty-five pounds in the previous two months, sleeplessness, fatigue, poor concentration, suicidal ideation without plan or intent, and symptoms of mania, including episodes lasting approximately three days of inflated self-esteem, grandiosity, decreased need for sleep, talkative states, racing thoughts, and increased goal-directed behavior, including shopping that thrust the family into debt. She reported

7

having seen a psychotherapist for approximately six months; she had never been hospitalized for her condition. (Tr. 225-27.)

Dr. Kelly opined that Plaintiff became anxious when her husband became disabled and could no longer be the breadwinner of the family. The mental status examination proceeded despite the fact that Plaintiff had nausea and wanted to throw up due to stomach difficulties, and the interpreter believed that Plaintiff's occasional confusion was due to nervousness and nausea. Plaintiff was fully cooperative and well groomed; she exhibited cohesive, coherent thought with poor organization; she saw shadows and heard voices but could not tell what was being said. Plaintiff had a sad and anxious mood. She was alert and oriented in all respects. She was unable to perform digit span forward or backward to four numbers, made inaccurate calculations subtracting from 100, was unable to draw a clock, but could perform a four-step command. Her insight and judgment were fair. (Tr. 227-28.)

Dr. Kelly opined that it was unlikely that Plaintiff could maintain gainful employment or do simple and repetitive tasks consistently because of her poor performance during most of the mental status portion of the evaluation, specifically the fund of knowledge, concentration, calculation, and similarities and differences portion of the evaluation. (Tr. 229.)

On September 16, 2003, Dr. Luyen Luu, a state agency psychiatrist, reviewed the record, completed a psychiatric review technique form (Tr. 246-59) and mental RFC assessment (Tr. 260-67), and opined that Plaintiff had bipolar I disorder and panic

disorder without agoraphobia.[2] Dr. Luu concluded that Plaintiff was not significantly limited in eighteen of twenty mental work-related categories; Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions. (Tr. 260-62.) Dr. Luu specifically concluded that Plaintiff had sufficient understanding and memory to understand, remember, and carry out simple instructions and to perform activities with directions without additional support and to maintain attention in two-hour increments. (Tr. 262.) In explaining the rejection of Dr. Kelly's conclusion, Dr. Luu stated that it appeared that the consulting examiner just based her diagnosis on the subjective information reported to her by the client and the activities of daily living provided by the client; no objective sources were sought, so the diagnosis was essentially subjective. Further, Plaintiff had not repeated any of the allegations to the independent medical consulting examiner eleven days later, and her poorly controlled diabetes mellitus was identified as a possible contributor to Plaintiff's nausea and anxiety. (Tr. 266.)

The ALJ expressly found that the extent of Plaintiff's claimed restrictions due to subjective complaints was not supported by the objective medical evidence and was not entirely credible. (Tr. 15.) The ALJ based this on a detailed analysis of the medical record with respect to physical impairments (Tr. 15) as well as Plaintiff's claims of depression for a year, difficulty concentrating, taking Paxil that helped a little, and

---

[2] Dr. George W. Bugg reviewed all the evidence in the file and affirmed Dr. Luu's assessment on January 15, 2004.

9

being forgetful (Tr. 16). The ALJ reasoned that Plaintiff's activities of daily living included cleaning the house, taking care of all her personal needs, cooking, shopping, performing all of the household chores except mopping, and having been paid in the past to care for her disabled husband and five children. (Tr. 16.)

The ALJ expressly gave little weight to Dr. Kelly's assessment because she only examined Plaintiff once, and there was nothing in the record to support the severity of her proposed limitations. (Tr. 16.)

Plaintiff does not challenge the sufficiency of the evidence, the findings, or the reasoning of the ALJ. Instead, Plaintiff argues that because Plaintiff had a moderate restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace, Plaintiff ipso facto had a nonexertional impairment that precluded reliance on the grids.

Plaintiff is incorrect in asserting that a moderate restriction of daily living necessarily renders application of the grids inappropriate. Plaintiff maintains that 20 C.F.R. 416.920a provides that moderate difficulty in maintaining activities of daily living, often deficiencies of concentration, persistence, or pace, or the presence of one or two episodes of decompensation would each, individually, constitute a severe impairment. The only such finding actually made in this case was of moderate difficulty of activities of daily living. Section 416.920a(c)(3) and (d)(1) provides that when rating the degree of

limitation in the functional area of activities of daily living, a five-point scale of none, mild, moderate, marked, and extreme are used; the last point on the scale (extreme) represents a degree of limitation that is incompatible with the ability to do any gainful activity. Thus, the clear import of the section is that a lesser point (including "moderate," the term used here to rate Plaintiff's functional limitations with respect to activities of daily living, and "mild," the term used to describe Plaintiff's difficulties in maintaining social functioning and maintaining concentration, persistence, or pace) represents a degree of limitation that is not necessarily incompatible with the ability to do any gainful activity.

Further, the Court notes that § 416.920a concerns the determination of whether or not an impairment is severe, which is the issue at step two of the five-step sequential analysis. Here, the ALJ found that Plaintiff's anxiety was severe at step two. The Court notes that after determining that an impairment is severe, the agency will then determine whether or not the impairment meets a listing, what the claimant's RFC is, and whether the claimant can perform past relevant work or other work. Section 416.920a(c) and (d) do not render any severe nonexertional impairment one that necessarily precludes reliance on the grids.

Plaintiff's reliance on POMS DI 24506.025(D)(1) is likewise unavailing because it also relates to the severity of the impairment at step two. Further, it is established that internal procedure manuals, including the Program Operations Manual System (POMS), do not impose judicially enforceable duties. Lowry v.

Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003).

Plaintiff contends that Listing 12.00(c)(1) establishes that a limitation to simple, repetitive tasks does not satisfactorily describe a determination of a moderate restriction in activities of daily living. With reference to the assessment of severity at step two, the regulation explains that four criteria are used in the assessment, of which one is activities of daily living. It defines activities of daily living as adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. It then states that the agency assesses the quality of these activities by their independence, appropriateness, effectiveness, and sustainability; the agency will determine the extent to which the claimant is capable of initiating and participating in activities independent of supervision or direction. Id. The regulation states:

> We do not define "marked" by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(1).

This part of the regulation does not speak to the relationship between a limitation to simple, repetitive tasks and a moderate restriction in activities of daily living. Plaintiff's argument appears to confuse two different functional areas.

Section 12.00(C) addresses the four functional areas mentioned in § 416.920(a)(c)(3) as the matters to be rated in assessing mental impairments, namely, activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Section 12.00(C)(3) provides that concentration, persistence, or pace refer to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. It states that strengths and weaknesses in areas of concentration and attention can be discussed in terms of the ability to work at a consistent pace for acceptable periods of time and until a task is completed, and the ability to repeat sequences of action to achieve a goal. It states in pertinent part:

> We do not define "marked" by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function. You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion. However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3).

In light of § 12.00(C)(1) and (3), it appears that the state agency physicians' limitation of simple, repetitive tasks related to Plaintiff's concentration, persistence, and pace. Further, it appears that the doctor's assessment focused on the appropriate factors set forth in the regulation because it evaluated

13

Plaintiff's ability to understand and remember simple and detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, perform activities with directions without additional support, maintain attention in two-hour increments, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 260-62.)

    Here, the ALJ expressly concluded that Plaintiff retained the RFC to perform a broad range of light work with a limitation to simple, repetitive tasks that was not significantly reduced by her nonexertional limitations. (Tr. 17.) The ALJ's finding was supported by the opinions of the state agency physicians.

    Plaintiff does not mount a customary challenge to the sufficiency of the evidence. However, in the reply, Plaintiff asserts that the state agency physicians and consultative examiner are not qualified to interpret how a moderate limitation in daily activities would affect the ability to work; instead, a vocational expert is required. However, Plaintiff again confuses the steps of the sequential analysis. The expert opinions supported the ALJ's conclusion regarding Plaintiff's RFC, which in turn included the issue of whether or not Plaintiff could perform a broad range of light work.

    The functional capacity to perform a full range of light

work includes approximately 1600 separate sedentary and light unskilled occupations constituting jobs that can be performed after a short demonstration or within thirty days, and do not require special skills or experience. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(a). It represents a substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competence for unskilled work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(b). The basic mental demands of competitive, remunerative, unskilled work include the abilities on a sustained basis to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. Soc. Sec. Ruling 85-15 p. 4.

The ALJ's conclusion that Plaintiff's limitation to simple, repetitive tasks did not significantly reduce Plaintiff's capacity for a broad range of light work was supported by the relevant expert opinions, which indicated that Plaintiff was not significantly limited in any respect other than the limitation to simple, repetitive tasks. (Tr. 260-62.)

Accordingly, the ALJ's reliance on the grids was appropriate. There was no need to obtain testimony from a vocational expert.

## DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a

whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Irene Perez.

IT IS SO ORDERED.

**Dated:   January 31, 2007**                       /s/ Sandra M. Snyder
icido3                                  UNITED STATES MAGISTRATE JUDGE